COOKE et ux. v. LOEW'S HOUSTON CO.

No. 8802.

Court of Civil Appeals of Texas. Austin.

June 7, 1939.

Rehearing Denied June 28, 1939.

Wood & Morrow and Newton Gresham, all of Houston, for appellants.

Bryan & Bryan, of Houston, for appellee.

BLAIR, Justice.

Appellants, O. S. Cooke and his wife, sued appellee, Loew's Houston Company, to recover damages for personal injuries sustained by Mrs. Cooke, when she fell in the aisle of appellee's motion picture theatre.

The rear eight rows of the seats in the theatre were situated on a concrete platform, ranging from about 2 to 4 inches above the level of the floor of the aisle. On the afternoon of the accident, Mrs. Cooke attended the theatre alone, and took a seat in one of the elevated rows of seats. She testified that when she entered the theatre it was very dark and that she felt her way to a seat without noticing that the particular row of seats was elevated above the aisle. After seeing the picture and while the theatre was still very dark, she proceeded to leave, and felt her way along the back of the row of seats in front of her until she reached the point where the elevated platform stopped, and as she stepped into the aisle she had the sensation of "stepping off into space," and fell in the aisle, sustaining serious injuries.

Appellants alleged several particulars in the construction, operation, and maintenance of the theatre as negligence on the part of appellee, which summarized are: (1) That the theatre was insufficiently lighted; and (2) that the operation of the theatre with the rear rows of seats elevated above the floor of the aisle constituted the maintenance of a condition dangerous to the patrons of the theatre, and particularly so considering the insufficient lighting.

Appellee answered by general and special denial and a plea of contributory negligence.

In answer to special issues submitting the grounds or issues of negligence alleged, the jury found:

1. That at the time Mrs. Cooke fell the theatre was so lighted as to afford reasonable safety to an ordinarily prudent and normal patron entering and leaving the theatre at the point where Mrs. Cooke fell, having in mind the purpose for which the theatre was used.

2. That appellee did not fail to construct or arrange and maintain the portion of the

theatre where Mrs. Cooke fell·in such manner as to afford reasonable safety to an ordinarily prudent and normal person entering and leaving the theatre, having in mind the purpose for which it was used.

3. That the combination of lighting and floor arrangement at the point where Mrs. Cooke fell afforded reasonable safety to an ordinarily prudent and normal patron entering and leaving the theatre, having in mind the purpose for which it was used.

In answer to special issues submitting the acts or omissions of Mrs. Cooke plead as constituting contributory negligence, the jury found:

1. That she failed to keep a proper lookout for said step-off as she was entering the aisle from the row of seats.

2. That she was negligent in failing to request the assistance of an usher in leaving the theatre.

3. That she was negligent in attempting to leave the theatre under the conditions alleged.

4. That she failed to keep a proper lookout for her own safety as she was leaving her seat in the theatre.

The jury also found that each of the above stated acts or omissions was negligence, and that each was a proximate cause of the injuries sustained by Mrs. Cooke.

Upon the jury's findings, judgment was rendered for appellee; hence this appeal.

■ Appellants predicate their appeal upon the claim that the court improperly admitted certain testimony of appellee's two experts with respect to the matter of the City of Houston having a building or construction code covering the designs and plans and the lighting systems of theatre buildings, and that the theatre in question complied with such code and was accepted and approved by the city officers as meeting with the requirements of the code.

Over the objection that such testimony was irrelevant and immaterial, witness Finn, the architect who designed and supervised the construction of the theatre, and who, after detailing the plans and manner of construction and lighting, particularly at the point where Mrs. Cooke fell, was permitted to testify as follows:

"Q. Now, state whether or not the design and plan of that theatre as a point for the gathering of the public to see the exhibition of pictures was or was not accepted by the city of Houston governing authorities dealing with the construction

of buildings under the construction code and ordinance? A. It was approved and accepted by the city building inspection division.

"Q. What about the lighting system in there, was or was not that inspected, approved, and accepted? A. It was approved by the city inspection division."

Appellants interpret Finn's testimony to be in substance that: "It was my opinion that this theatre complied with the city ordinance. It was the opinion of the city officers that it did so. It was, therefore, accepted by the city officers as being in compliance with the ordinances."

We do not so interpret the testimony. The witness merely stated that the design and plan and lighting system were inspected, approved, and accepted by the Houston authorities dealing with such matters. Whether the city authorities inspected, approved, and accepted the structural arrangement and lighting system of the building were questions of fact. Whether such matters complied with the city codes were also questions of fact but this witness did not in any manner give his opinion or conclusion as to whether the structural arrangements or lighting system met with the requirements of the city ordinances. His testimony was not objectionable on the ground that same was irrelevant and immaterial.

■ Witness Flavin, who at the time was an electrical contractor but who had theretofore been for many years head of the electrical inspection department of the City of Houston, testified that the City of Houston had a code covering lighting and electrical installations; and over the objections that his testimony was an opinion and conclusion upon the material and ·ultimate facts of the case, and called for an opinion and conclusion of the law of the case, Flavin was permitted to testify as follows:

"Q. In your capacity as chief electrical inspector for the City of Houston, state whether or not you had any occasion to inspect the electrical installation and lighting system in Loew's State Theatre when it was built? A. Oh, yes, I inspected it myself personally.

"Q. Did you or not accept it and approve it for the City of Houston? A. I did."

"Q. State whether or not it met the requirements laid down by you as inspector

for the light system to be used in the theatres serving the public in the city of Houston. * * * A. I did approve it as chief inspector, because I was aware of the fact that it did comply with the city regulations * * *."

"Q. When you made that inspection down there, tell us how you made it, and what part you had in it. A. Well, I went all over the building, the stage, foyer, entrance and sidewalk. I went all over it to see that the necessary precautions had been provided as we require them before we okeh it for a service connection."

"Q. State whether or not the lighting system employed at Loew's State Theatre met with the city regulations and ordinances controlling the lighting of theatres in the city of Houston. A. Yes, they did."

The code of the City of Houston relating to the structural design and plan and the lighting system of the theatre was not introduced in evidence. Appellants complain that it was error to permit the witness to testify that the lighting system of the theatre complied with the city code, and that it was inspected, approved, and accepted by the city officers as meeting the requirements of the code. It is claimed that such testimony violates the settled rule that no witness may give an opinion which involves a legal conclusion, whether the factual basis thereof be supplied by the witness himself or by another; or, expressed otherwise, a witness may not state an opinion which is the result of the exercise of his own judgment upon a series of facts, or which, if it were accepted by the jury, would determine the matters of law as well as the facts involved. It is further claimed in this connection that the testimony was particularly prejudicial because it related to the two ultimate fact issues plead: (1) Insufficient lighting; and (2) that the design or plan of the theatre was not safe, but dangerous; and that its maintenance in that condition was negligence, and particularly so considering insufficient lighting. We do not sustain these contentions.

It was not alleged and appellants did not base their claim of negligence on the part of appellee upon the grounds that the structural design, plan, and the lighting system were not in accordance with the city code relating thereto. Nor was it alleged or claimed that the theatre was not constructed in compliance with the code requirements. And although appellants did allege that the original construction and lighting arrangements of the theatre were defective and inherently dangerous, the only issue of negligence submitted to the jury was whether or not at the time Mrs. Cooke fell in the aisle of the theatre appellee was maintaining and operating the theatre in an unsafe manner, (1) because of insufficient lighting; and (2) because the row of seats was situated on a riser, which was dangerous, and particularly so because of the insufficient lighting of the theatre at that particular time. So the question of whether at the time of the completion and acceptance of the building it was passed on and accepted by the inspection division with regard to lighting and as to whether it complied with the city ordinance was not the ultimate issue of fact before the jury. The question of whether the theatre was constructed or lighted in accordance with the rules and regulations of the city relating thereto was simply evidence tending to show that at the time it was constructed and accepted it was not negligently constructed either as to structural plan or lighting system. The gravamen of the negligence alleged was that at the time Mrs. Cooke fell into the aisle, the theatre was extremely dark and that the lights were not burning at all; or it was so insufficiently lighted that one could not see to get from the seats into the aisle where the offset existed. If the cause of action were based entirely upon the claim that the structural design and the lighting system were in violation of the city ordinance controlling such matters, then the testimony of the experts or the chief inspector of the electrical system for the city, that it complied with the city ordinance, might not have been admissible in the form given. In such situation, the better practice would have been to have introduced the ordinance, and then the testimony as to the conditions as they existed. The question of whether or not it complied with the city ordinance could have then been submitted to the jury with a proper instruction from the court with regard to the city ordinance. No such issue was involved, and hence no such issue was submitted. The only issues of fact with regard to negligence of appellee were whether, at the time Mrs. Cooke fell, the theatre was so lighted as not to afford reasonable safety to an ordinarily prudent person entering and leaving the theatre at the point where she fell; whether the theatre was so constructed, arranged, and maintained where Mrs. Cooke fell so as not to afford

reasonable safety to an ordinarily prudent person entering and leaving the theatre; and whether the combination of lighting and floor arrangements at the point where Mrs. Cooke fell did not afford reasonable safety to an ordinarily prudent person entering and leaving the theatre, having in mind the purpose for which it was used. These issues were carefully submitted to the jury and they answered all of them in favor of appellee.

If it be admitted, however, that the testimony of Flavin that the lighting system was in accordance with the city code relating thereto and met the requirements of such code, was improperly admitted, then we do not regard the improper admission of this testimony as requiring a reversal of the judgment, because the jury found on several issues of fact that Mrs. Cooke was guilty of contributory negligence in several particulars; and that each of such acts of contributory negligence was the proximate cause of her injury. The jury found that Mrs. Cooke was acquainted with the theatre and its arrangements, having attended it on several occasions; that she failed to keep a proper lookout for her own safety in entering the aisle from the row of seats from which she fell; that she was also negligent in failing to call or request the assistance of an usher on leaving the theatre; that she was also guilty of negligence in attempting to leave the theatre under the conditions alleged by her. She testified that when she entered the theatre it was very dark, and that one could not see without feeling one's way along the seats. She testified that she remained during the showing of the picture twice, and that the theatre continued dark continuously throughout the showing of the picture; that when she started to leave the theatre, it was still very dark and that she had to feel her way along the back of the row of seats in front of her. She did not call the assistance of an usher because she said she was rather independent.

These ultimate issues of fact regarding contributory negligence and direct negligence on the part of Mrs. Cooke, such as failure to keep a proper lookout and failure to call an usher, were such that we do not see how the testimony of the witness Flavin that the theatre's lighting system was constructed in accordance with the code of the City of Houston and that it met its requirements at the time it was built, could have had any influence or effect upon the jury in their answers to these issues of contributory negligence. The judgment of the trial court will be affirmed.

Affirmed.